UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

GARY L. WENZEL,

        Plaintiff,

v.                                                   Case No. 16-C-1236

BOBBI J. CHRISTOPHERSON and
MATTHEW PETERSON,

        Defendants.

## DECISION AND ORDER GRANTING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Gary Wenzel filed this *pro se* civil rights suit under 42 U.S.C. § 1983 against his former parole agent and the agent's supervisor. Wenzel claims that the defendants' decision to pursue revocation of his supervision was in retaliation for a lawsuit he filed against the Oconto County Jail and staff in 2014. Currently before the court is the defendants' motion for summary judgment. For the following reasons, the defendants' motion will be granted and the case will be dismissed.

## BACKGROUND

Wenzel is currently an inmate at Oshkosh Correctional Institution after having his probation and extended supervision from several previous convictions revoked. Wenzel has been on supervision or in prison since 1995. At the time the revocation proceedings that are the subject of the instant action commenced, Wenzel was on supervision for two separate cases. In Shawano County Case No. 94-CF-7, Wenzel was convicted of theft by fraud and sentenced to ten years in prison pursuant to a judgment of conviction entered on October 10, 1995. (ECF No. 25-1 at

30–31.) The prison sentence was stayed, however, and Wenzel was placed on probation for a term of ten years that was ordered to run consecutively to sentences imposed in two other cases, the last of which discharged on May 6, 2011. (ECF No. 25-1 at 23.) In Oconto Case No. 02-CF-29, Wenzel was convicted of three counts of theft in a business setting and two counts of theft by contractor and sentenced to a total term of eleven years with three years of confinement and eight years of extended supervision, the Wisconsin equivalent of supervised release. (ECF No. 25-1 at 22.) Judgment in that case was entered on June 11, 2004. (ECF No. 25-1 at 36–37.) The Oconto County convictions did not result in the revocation of Wenzel's probation in the Shawano County case apparently because his term of probation had not yet commenced at the time they occurred. The same was true when Wenzel's supervision in the Oconto County case was revoked in 2008 for consuming alcohol, physically assaulting his girlfriend, and engaging in contract work in violation of the court-imposed conditions. (Defs.' Proposed Findings of Fact (DPFOF) ¶ 8, ECF No. 23.) Although Wenzel's supervision in the Oconto County case was again revoked in 2014 after his term of probation had commenced, Peterson and Christopherson elected not to seek revocation of his probation in Shawano Case No. 94-CF-7 at that time because they concluded the violations were not so serious as to warrant imposition of the ten-year sentence that would have resulted. (*Id.* ¶ 45.)

Upon his release from prison after the 2014 revocation, Wenzel lived with his sister and brother-in-law in Oconto County. (*Id.* ¶ 11.) Defendant Matthew Peterson[1] was Wenzel's parole agent from March 26, 2014 until January 25, 2017, and Defendant Bobbi Christopherson was Peterson's supervisor. (*Id.* ¶¶ 5–6.) Before becoming a Corrections Field Supervisor in 2007,

---

[1]The parties refer to this defendant as Matthew Peterson and Matthew Petersen interchangeably throughout their filings. For the sake of consistency, the court will refer to him as "Peterson" in this Decision and Order.

Christopherson worked as a Corrections Officer for the Oconto County Jail from 1997 to 2002. (*Id.* ¶ 65.) Wenzel later learned that she had worked with several of the Oconto County employees he sued in a 2014 lawsuit against the jail.

On March 7, 2016, the Green Bay Police Department notified Peterson that it was investigating Wenzel after receiving a complaint from Shawn Trepanier and Summer DeKeyser that Wenzel took $200 from them. (*Id.* ¶¶ 12–13.) Trepanier and DeKeyser claimed Wenzel told them he was a broker for several landlords, and talked them into giving him $200 in exchange for an apartment key. (*Id.* ¶ 13.) After they paid him, however, Wenzel claimed he needed to retrieve the key. Trepanier and DeKeyser stated that Wenzel never returned with the key or their money. (*Id.*) Wenzel asserts he never stole their money. Instead, he claims he combined the $200 with his own money to rent them a home. (Pl.'s Resp. to DPFOF ¶ 13, ECF No. 27.) In any event, after receiving the voicemail from the police department, Peterson attempted to contact Wenzel about the incident numerous times throughout the week, but Wenzel's listed telephone number was not accepting calls. (DPFOF ¶¶ 14–15.) On March 15, 2016, Peterson contacted Wenzel's brother-in-law who stated Wenzel had not lived with them for several weeks and did not know where he was currently residing. (*Id.* ¶ 17.) On April 11, 2016, Ron Hayes notified the Oconto Corrections office that Wenzel had stolen his trailer. (*Id.* ¶ 18.) Between April 11 and April 14, 2016, Wenzel sold another trailer belonging to Corevac Inc., without its consent, to Ralph's Auto Salvage in Oconto, Wisconsin. During the transaction, Wenzel removed a water pump from the trailer. (*Id.* ¶¶ 38–39.) Peterson placed Wenzel in Absconder Status on April 26, 2016. (*Id.* ¶ 19.)

On May 2, 2016, the Green Bay Police Department notified Peterson that Wenzel had been arrested and was detained at the Brown County Jail. (*Id.* ¶ 20.) Police had arrested Wenzel after

he fled a residence to which police had been dispatched. (*Id.* ¶¶ 21–25.) Wenzel attempted to evade arrest by swimming down the East River in Green Bay, Wisconsin. After retrieving him from the river, police took him to the hospital for treatment for hypothermia, where Wenzel continued to obstruct officers by giving them false names. He eventually provided his real name and was transported to the Brown County Jail upon discharge from the hospital. (*Id.* ¶¶ 26–28.)

At the jail, Wenzel gave a signed statement regarding the events occurring from March 7 to May 2, 2016. He admitted he had taken $200 from DeKeyser to find her an apartment but denied acting as a broker. He stated he did not report to his parole agent as ordered because he was using cocaine on a daily basis and had stayed in different residences around the area, usually with other drug users. Wenzel admitted borrowing Hayes' trailer but claimed someone else had stolen it. He did not know who took it or where it was. Wenzel admitted he had smoked crack-cocaine the night of his arrest and did not remember resisting or obstructing officers. His urinalysis at the jail tested positive for cocaine and negative for every other drug. (*Id.* ¶¶ 30–32.)

On May 6, 2016, the defendants decided to pursue revocation of Wenzel's supervised release in Case No. 02-CF-29 and probation in Case No. 94-CF-7. In Case No. 02-CF-29, Wenzel had just over five years available for reconfinement. As such, the defendants recommended one year, six months, and eight days of reconfinement for that case. Because a ten year sentence had already been imposed and stayed at the time of sentencing in Case No. 94-CF-7, no recommendation was necessary. (*Id.* ¶¶ 51–52.) Upon revocation in that case, the ten-year sentence automatically went into effect.

An administrative law judge (ALJ) heard the matter on August 25, 2016 and concluded Wenzel violated the conditions of his supervised release by (1) misrepresenting himself as a rental

4

broker; (2) taking $200 from Trepanier and DeKeyser; (3) absconding from supervision; (4) changing his residence without prior approval; (5) failing to return Hayes' trailer; (6) taking Corevac Inc.'s trailer without its consent; (7) selling Corevac Inc.'s trailer without its consent; (8) taking Corevac Inc.'s water pump without its consent; (9) fleeing and resisting arrest from the Green Bay Police Department; (10) obstructing an officer by providing two false names after arrest; and (11) possessing and consuming cocaine. (*Id.* ¶ 56.) The ALJ revoked Wenzel's probation in Case No. 94-CF-7, thereby activating the ten-year imposed and stayed sentence, and revoked his extended supervision in Case No. 02-CF-29. The ALJ adopted the agents' sentencing recommendation in that case and ordered Wenzel reincarcerated. (*Id.* ¶ 57.) The revocation was upheld on appeal. (*Id.* ¶ 58.)

Wenzel commenced this action on September 14, 2016. He claims that because Christopherson and one of the Oconto Jail employees he sued in 2014 were close friends, Christopherson and Peterson increased their recommendation from one year, six months, and eight days to eleven years and six months at his revocation hearing. Liberally construing his complaint, Wenzel was allowed to proceed on a claim that the defendants retaliated against him for exercising his constitutional rights.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there

5

is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

**ANALYSIS**

The defendants argue that Wenzel's claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* bars a § 1983 plaintiff from asserting claims that, if true, would "necessarily imply the invalidity of his conviction or sentence." *VanGilder v. Baker*, 435 F.3d 689, 691 (7th Cir. 2006) (quoting *Heck*, 512 U.S. at 487). If the plaintiff's lawsuit demonstrates the invalidity of his conviction or sentence, "the complaint must be dismissed until the plaintiff can show that the conviction or sentence has been invalidated." *Id.* However, because the plaintiff may renew his § 1983 claim if he ever succeeds in overturning his sentence, dismissal under *Heck* is without prejudice. *See Perez v. Sifel*, 57 F.3d 503, 505 (7th Cir. 1995); *see also Copus v. City of Edgerton*, 96 F.3d 1038, 1039 (7th Cir. 1996) (per curiam) ("When a plaintiff files a § 1983 action that cannot be resolved without inquiring into the validity of confinement, the court should dismiss the suit without prejudice."). Even aside from *Heck*, however, Wenzel's claim fails because he is unable as a matter of law to establish a causal connection between the defendants' alleged retaliatory animus and his revocation.

Generally, to prevail on a First Amendment retaliation claim, a plaintiff must demonstrate that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that

would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Novoselsky v. Brown*, 822 F.3d 342, 354 (7th Cir. 2016) (internal citations omitted). In addition, and more fundamentally, however, a plaintiff asserting a First Amendment retaliation claim "must show a causal connection between a defendant's retaliatory animus and subsequent injury . . . ." *Hartman v. Moore*, 547 U.S. 250, 259 (2006).

"The First Amendment right to petition the government 'extends to the courts in general and applies to litigation in particular.'" *Novoselsky*, 822 F.3d at 355 (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). Thus, Wenzel's lawsuit against the Oconto County Jail employees constitutes activity seemingly protected by the First Amendment. Nor is there any dispute that revocation of his supervision and return to prison is the kind of detriment likely to deter First Amendment activity in the future. As for the third element—whether the plaintiff's First Amendment activity was a motivating factor—given the fact that "any minimally competent attorney (or pro se litigant) can convert any adverse decision into a motive-based tort," *Crawford-El v. Britton*, 523 U.S. 574, 605 (1998) (Rehnquist, C. J, dissenting), and the view that "an official's subjective good faith [is] a question of fact 'inherently requiring resolution by a jury,'" *id.* at 603 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982)), seldom will there not exist at least circumstantial evidence to raise a jury issue. After all, is it really a surprise that public officers might harbor ill feeling toward inmates who accuse them or their friends of violating their constitutional rights? It is in the need to establish a cause, however, that Wenzel's case flounders.

In *Hartman v. Moore*, the Court addressed the showing required for a retaliatory prosecution claim. In that case, the plaintiff was subjected to a federal prosecution for fraud in connection with

7

the U.S. Postal Service. At the close of the Government's case, after six weeks of trial, the district court concluded there was a "complete lack of direct evidence" connecting the plaintiff to any of the criminal wrongdoing alleged, and granted the plaintiff's motion for judgment of acquittal. 547 U.S. at 254. The plaintiff then brought a *Bivens* action[2] against the prosecutor and five postal inspectors whom he claimed "engineered his criminal prosecution in retaliation for criticism of the Postal Service, thus violating the First Amendment." *Id.* The district court dismissed the claims against the prosecutor on grounds of prosecutorial immunity, but denied the postal inspector's motion for summary judgment on grounds of qualified immunity. The Supreme Court reversed, holding that a retaliatory prosecution claim is barred absent a showing that probable cause for the crimes charged was lacking. The Court provided two reasons for its holding. First, "[d]emonstrating that there was no probable cause for the underlying criminal charge will tend to reinforce the retaliation evidence and show that retaliation was the but-for basis for instigating the prosecution, while establishing the existence of probable cause will suggest that prosecution would have occurred even without a retaliatory motive." *Id.* at 261. Second, the Court noted that in retaliatory prosecution cases against law enforcement officers, the charging decision is made by a prosecutor who is immune from liability, not the law enforcement officer. *Id.* at 261–62. Requiring a lack of probable cause for the earlier prosecution is essential, the Court held, because in its absence there could be no causal connection between the alleged animus and the deprivation:

---

[2] "*Bivens* [*v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971),] established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Carlson v. Green*, 446 U.S. 14, 18 (1980). A *Bivens* action is the federal analog to suits brought against state officials under 42 U.S.C. § 1983.

8

> Herein lies the distinct problem of causation in cases like this one. Evidence of an inspector's animus does not necessarily show that the inspector induced the action of a prosecutor who would not have pressed charges otherwise. Moreover, to the factual difficulty of divining the influence of an investigator or other law enforcement officer upon the prosecutor's mind, there is an added legal obstacle in the longstanding presumption of regularity accorded to prosecutorial decisionmaking. *See Reno v. American–Arab Anti–Discrimination Comm.*, 525 U.S. 471, 489–490, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999); *United States v. Armstrong*, 517 U.S. 456, 464–466, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). And this presumption that a prosecutor has legitimate grounds for the action he takes is one we do not lightly discard, given our position that judicial intrusion into executive discretion of such high order should be minimal, *see Wayte v. United States*, 470 U.S. 598, 607–608, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985).

*Id.* at 263.

Even though this is a revocation proceeding and not a criminal prosecution, the same reasoning applies. Regardless of whether Peterson or Christopherson bore any animosity toward Wenzel for his earlier lawsuit, they were not the decision makers on his revocation; they did not cause the deprivation of his liberty. An ALJ heard the evidence and made the decision to revoke his supervision and his probation. Indeed, Wenzel even admitted to some of the violations and does not challenge the ALJ's findings here. Thus, there was far more than probable cause to believe that Wenzel violated the conditions of his supervision; there was conclusive evidence. It thus follows that regardless of any animosity Peterson or Christopherson may have had for Wenzel, it was not a cause of his revocation. The cause was Wenzel's own conduct. For this reason, his First Amendment retaliatory claim is without merit.

Finally, though the defendants have not asserted it, it also appears clear that the defendants would be immune from liability under the doctrine of quasi-prosecutorial immunity. *See Wilson v. Kelkhoff*, 86 F.3d 1438, 1444 (7th Cir. 1996) ("Thus, 'not only the actual decision to revoke parole, but also activities that are part and parcel of the decision process' justify absolute immunity."

9

(quoting *Thompson v. Duke*, 882 F.2d 1180, 1184 (7th Cir. 1989), and *Trotter v. Klincar*, 748 F.2d 1177, 1182 (7th Cir. 1984), *cert. denied*, 495 U.S. 929 (1990))). For this reason also, summary judgment is appropriate.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment (ECF No. 21) is **GRANTED**. The Clerk is directed to enter judgment dismissing the case with prejudice.

**SO ORDERED** this  8th   day of May, 2017.

>   s/ William C. Griesbach
> William C. Griesbach, Chief Judge
> United States District Court